*196 OPINION OF THE COURT
Leonard Silverman, J.
Claimant’s motions for summary judgment on claims numbered 53716 and 54652 are hereby consolidated for purposes of decision.
Both claims are based upon subdivision 5 of section 340-b of the Highway Law as it existed at the time of the filing of the claim and arise out of Federally aided condemnation proceedings originally brought by the city and in connection with which the State, as required, reimbursed the city for the amount of the awards together with interest up to one year. Both claims currently before the court involve the interest paid by the city for the periods in excess of one year in reimbursing condemnees. The opposition of the State to payment of both these claims, as on numerous others not before the court, is based on the timeliness of the filing of the notices of claim.
Claim No. 53716 was filed on April 19, 1971 and Claim No. 54652 was duly filed on January 18, 1972. Claim No. 53716 was never formally rejected. Claim No. 54652 was not rejected until subsequent to the filing of the notice of claim. It is the position of the State as advanced by its Assistant Attorney-General, that neither of these claims was timely filed.
A proper understanding of the underlying judicial history of these related proceedings is necessary and essential for a just determination of these motions and accordingly we herewith set forth those facts based upon which this decision is rendered.
In December of 1969 this court’s predecessor decided a case similar on its facts to the cases at bar and bearing the same caption. In a lengthy and learned decision (61 Mise 2d 517), Judge Squire held that in cases arising out of condemnations instituted under these sections, interest is reimbursable to the city beyond the one year title vesting date, and that this court is the proper forum for determination of these actions rather than article 78 proceedings in Supreme Court. Judge Squire however held that under the facts of that particular case, the filing of the claim was untimely, and the city’s claim was, therefore dismissed.
The reasoning behind that decision formed the basis for the city’s actions and procedures in the cases at bar. Its validity, *197 in view of the subsequent reversal, must form the basis for our decision.
Subdivision 4 of section 10 of the Court of Claims Act provides that "[a] claim for breach of contract, express or implied and any other claim not otherwise provided for by this section * * * shall be filed within six months after the accrual of such claim”. Because subdivision 3.3 of section 349-c of the Highway Law provides that the city shall be paid "after audit by the state comptroller”, the questions present themselves as to when a claim accrues where there has been no audit and rejection, and whether, indeed, actual formal rejection is necessary.
In answer to these questions Judge Squire imposed a test of "reasonable time” for rejection. It was his opinion that a request for payment which was not honored, audited or otherwise rejected within two months after submission of the vouchers, should be deemed constructively rejected and a notice of claim filed within the statutory period following those two months. (City of New York v State of New York, 61 Misc 2d 517, 537, supra.) Since the claim in the particular case cited was filed almost nine months after it should have been deemed rejected, Judge Squire held it to be untimely.
This then was the state of the law at the time the instant claims were filed. Counsel for the claimant, the Assistant Corporation Counsel, properly points out that both claims at bar were filed within eight months of submission of the vouchers (request for payment) and thus within six months of what was then pursuant to the governing case law, judicially declared to be the accrual of the cause of action.
Without indulging in a further recitation of the history of these litigations, suffice it to say that the defendant, the State of New York, urges this court to adopt the requirement of strict conformance with the fact pattern as it existed in Claim No. 47847 as such facts were recited by the Court of Appeals (City of New York v State of New York, 40 NY2d 659) in its ultimate review of Judge Squire’s decision in the case cited (City of New York v State of New York, 61 Misc 2d 517, supra).
Judge Fuchsberg, writing for the majority, cited with approval the city’s procedure in that one particular claim in giving written notice to the State Comptroller that it would deem the claim rejected if not audited within 60 days of the date of that letter. The Court of Appeals held that the six- *198 month period within which to file a claim, commenced at the end of the 60 days after the date of the letter rather than after the arbitrary 60-day period following submission of the vouchers as set by Judge Squire.
It would seem to be the position of the State in the cases at bar that, in the absence of a formal rejection by the State Comptroller, such a letter would be condition precedent to the filing of a claim.
Should the court follow this reasoning to its logical conclusion, we would be forced to hold that in the event the filing of these claims was not late, it must have been premature. We refuse to place the city in this "Catch 22” position and we hold that under all the circumstances and facts at bar and based upon the equitable and legal principles as enunciated by Judge Fuchsberg, these claims are, and are hereby determined to be, timely.
It is the opinion of this court that rather than setting a new standard for when the cause of action could be deemed to have accrued, the Court of Appeals simply liberalized and vacated some existing restrictive standards. It held that "constructive rejection” is sufficient to constitute the accrual of a cause of action.
"The issue then narrows to whether, on all the facts here, the city nevertheless should at some point have considered its claims to have been constructively rejected by the State, especially since it is obvious that, if constructive rejection were not available, the State could cast the city’s claims into legal limbo forever, for, without an audit, it could neither be paid nor bring suit.” (City of New York v State of New York, 40 NY2d 659, 668, supra.)
It was the holding of Judge Squire that the passage of 60 days after submission of the vouchers without an audit during that period, would constitute the only standard for constructive rejection. The Court of Appeals, we believe, broadened this standard and, in addition, established another standard of constructive rejection — failing to audit after written notice.
It is the decision of this court that, notwithstanding the subsequent reversal by the Court of Appeals of Judge Squire’s decision, the city was, nonetheless, justified in relying — at the time of the filing of the instant claims — on the restrictive standards set by Judge Squire.
We hold that it was the intention of the Court of Appeals to *199 liberalize a restrictive and, what it called "unrealistic”, standard of constructive rejection. Compliance with that standard —which prior to the 1976 decision of the Court of Appeals was the only judicially recognized standard — should not militate to deprive a party of its day in court.
Although the Court of Appeals might be deemed to have preferred the official notice by letter form of constructive rejection, we note that such an option was not, in 1971 and 1972, a valid and judicially approved alternative. The city did the only thing it could have done under the then existing law: it filed its notice of claim, within six months after the 60-day period following submission of the vouchers. In the event the city would not then have filed, it would have run the risk of being found guilty of laches, or of a possible affirmation of Judge Squire’s "exhaustive research and thoughtful analysis.” (40 NY2d 659, 664, supra.) The city was clearly on the "horns of a dilemma.” It should not be faulted for complying with the law as it then existed — especially since that law has merely been subsequently liberalized.
Accordingly, we have no option but to grant the city’s motions for summary judgment.
The motions before the court were hotly contested by both the city and State of New York. Consequently, we feel compelled to close this decision with the following words of Judge Fuchsberg: "Both of these powerful public entities with their mutual need to co-operate on a host of fronts, financial and otherwise, should be expected to act with far more motivation to avoid litigation wherever possible.” (Supra, p 670.)