CITY OF NEW YORK, Appellant, v STATE OF NEW YORK, Respondent.

First Department, December 1, 1981

### APPEARANCES OF COUNSEL

*Jerome C. Gilman* of counsel *(Leonard Olarsch* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellant.

*Dennis Hurley* of counsel *(Jeremiah Jochnowitz* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

In 1967, under authority of former subdivision 5 of section 340-b and former subdivision 3.3 of section 349-c of the Highway Law, claimant (City) acquired certain Staten Island property on behalf of the State by condemnation for the purpose of widening the West Shore Expressway as part of the Federally aided interstate highway system. Vouchers for reimbursement were submitted to the State Department of Transportation on July 29, 1971, which

submissions were revised on December 1 of that year. The revised submission reflected segregated requests for reimbursement in the amount of (a) $1,868,586.33, constituting the principal sum expended plus interest paid up to one year following the date of title vesting, and (b) $73,138.83, representing interest accrued and paid to the property owners thereafter until the date of final payment. On March 27, 1972, the City filed its claim for these two amounts against the State in the Court of Claims. The State subsequently paid the first voucher while the claim was pending. The Court of Claims granted the State's motion to dismiss the second claim on the ground that it was premature because the City had failed to file a 60-day notice to the Comptroller to audit the claim.

Under subdivision 4 of section 10 of the Court of Claims Act a claimant has six months from the accrual of a claim to file the claim. Such a claim does not accrue until the claimant possesses the legal right to be paid and to enforce its right to payment in court *(City of New York v State of New York,* 40 NY2d 659, 668). The State urges that such a right does not arise until appropriate governmental action is taken on the claim, here an audit by the State Comptroller. A rejection by the Attorney-General (as was done here by letter dated December 22, 1971) or by some other State governmental official was held by the Court of Appeals to be insufficient.

In *City of New York v State of New York (supra)* the Court of Appeals recounted the history of the relationship between the parties herein with respect to these condemnation reimbursement claims. For years the City regularly submitted separate vouchers for reimbursement of principal plus "first-year" interest, and for "post-first-year" interest, as here, and just as routinely the State ignored the post-first-year claims, neither auditing nor formally rejecting them. Finally, the City decided to take the initiative and force the issue by sending the State Comptroller a letter setting a 60-day limit beyond which the City would consider these heretofore ignored post-first-year claims constructively rejected.

In *City of New York v State of New York* (61 Misc 2d 517, 536) the Court of Claims rejected this procedure, ruling

that the date fixed by the City's letter was arbitrarily selected. The claims were held time barred. The court ruled that 60 days after filing the request for payment was a reasonable time for the State's audit and that the statutory six-month limitation on the time for filing a claim then began to run. Since the claims had been filed beyond that date, they were held time barred. The Appellate Division affirmed (49 AD2d 644), but the Court of Appeals reversed the dismissal of the City's claims (40 NY2d, at pp 670-671), ruling that the six-month limitation on filing a claim with the Court of Claims would run from the date of constructive rejection of the voucher, unless actually rejected sooner. The court observed that actual rejection could only come about upon the State Comptroller's audit and not by opinion of the Attorney-General (40 NY2d, at p 668), as here. Since, as here, the Comptroller might never audit the voucher, thus casting the City's claim into limbo, the six-month period should be deemed to run from the constructive rejection of the claim. The Court of Appeals approved the City's procedure of a 60-day letter in that case to establish a constructive rejection and thus held the claims not time barred. However, the court did not mandate a 60-day letter, as the State now claims and the Court of Claims ruled herein in rejecting as premature the claims *sub judice.*

The Court of Appeals was dealing with timeliness, not prematurity, as appears from its opinion (40 NY2d, at p 670): "Given all of these facts, the Court of Claims' dismissal for *untimeliness,* based as it was on its opinion that a failure to audit within two months after the submission of the vouchers was the equivalent of rejection, was unrealistic and cannot be permitted to stand." (Emphasis supplied.)

The court there allowed all of the claims to stand, including those as to which the 60-day notice had been sent (Claim No. 47847), where the vouchers requesting payment had been submitted over a period of six years prior to the 60-day notice, and those filed with the Court of Claims "less than five months after the vouchers had been filed" (40 NY2d, at p 665), although with respect to the latter

there had been no Comptroller's audit and no 60-day letter (Claim No. 52436).

Here the City never wrote a 60-day letter to the Comptroller. It allowed 60 days for audit by the Comptroller after filing the original voucher on July 29, 1971. The City concedes this to be the effective date of the filing for purposes of this litigation, despite an amended and corrected submission on December 1, 1971. When there was no action by the Comptroller within 60 days, the City treated the inaction as a constructive rejection and filed its claim with the Court of Claims on March 27, 1972, within six months of the expiration of the 60 days.

The City's procedure allowed two months for audit by the State Comptroller and six months thereafter for filing in the Court of Claims, on the theory that the failure of the Comptroller to audit within 60 days amounted to a constructive rejection. This was the procedure approved by the Court of Appeals respecting Claim No. 52436, where the claim was filed within five months of the submission of the voucher but there was neither an audit nor a 60-day letter. (See *City of New York v State of New York*, 92 Misc 2d 195, sustaining claims filed within eight months of submission of the vouchers.)

As stated by the Court of Appeals in *City of New York v State of New York* (40 NY2d, at p 668): "The issue then narrows to whether, on all of the facts here, the city nevertheless should at some point have considered its claims to have been constructively rejected by the State, especially since it is obvious that, if constructive rejection were not available, the State could cast the city's claims into legal limbo forever, for, without an audit, it could neither be paid nor bring suit."

Here the Court of Claims, on the State's urging, dismissed the City's claim upon the ground that it was premature, because of failure to serve a 60-day notice. On the original argument in this court the State took the same position. On this motion the State seems to be contending that the City's claim is time barred for failure to file within six months after submission of the original voucher. There is no merit to either position.

It is plain that the State has constructively rejected this claim by failure of the Comptroller to audit it notwithstanding the absence of a 60-day letter. The statute does not require such a letter. Nor did the Court of Appeals impose such a requirement *(City of New York v State of New York,* 40 NY2d 659, *supra)* in approving the City's initiative in sending such a notice to ground its claims against the State, covering five and one-half years.

With respect to the claims filed within five months of the submission of the vouchers, the Court of Appeals did not require the service of a 60-day letter. Hence such a letter is not a prerequisite to Court of Claims jurisdiction. The Court of Claims erred in ruling to the contrary in this case. With respect to the claims filed up to five and one-half years after the original vouchers, the Court of Appeals held that the 60-day notice was an appropriate procedure for putting the State on notice, by taking claims "out of limbo". But the court nowhere stated that such procedure was mandated. Here the City waited 60 days for a Comptroller's audit and when none was forthcoming filed its claim within six months thereafter. The fact that the City's claim was filed eight months after submission of the vouchers did not result in a bar of such claim as untimely or make it premature. The 60-day letter is neither mandated by statute nor required by court ruling. The City's procedure was in conformity with the principles of *City of New York v State of New York (supra).*

Since the amount involved appears not to be in dispute, the City is entitled to summary judgment and we so direct.

The order of the Court of Claims (AMANN, J.), entered March 10, 1980, denying claimant's motion for summary judgment and dismissing the claim without prejudice to renewal, should be reversed, on the law, and claimant's motion for summary judgment should be granted, without costs.

[See 82 AD2d 427, 85 AD2d __.]

SANDLER, J. P., CARRO, and BLOOM, JJ., concur.

Order, Court of Claims, New York County, entered on or about March 10, 1980, reversed, on the law, and the

claimant's motion for summary judgment granted, without costs and without disbursements.